# EXHIBIT "A"

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | | |
|---|---|---|
| JACK STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.1CCV-21-0000103 |
| vs. | ) | |
| | ) | |
| BRIAN SCHATZ AND JENNIFER | ) | |
| WOOTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### INITIAL COMPLAINT

**PLAINTIF BRINGS SUIT FOR CHILD ENDANGERMENT, PAIN AND SUFFERING, VIOLATION OF THE PRIVACY WAIVER ACT, DEFAMATION PER SE, MONEY DAMAGES AND WRONGFUL INTERJECTION INTO PASSPORT APPLICATION FOR PLAINTIFF'S MINOR CHILD, APPLIED FOR AT THE U.S. TOKYO EMBASSY IN JAPAN, WHERE PLAINTIFF SOUGHT PASSSPORT REISSUANCE UNDER CFR 2012 TITLE 22 VOL.1 §51-28, 8 FAM 502.5-2E(4) AND 8 FAM 502.5-3D(4), AFTER THE CHILD WAS ABDUCTED AND WRONGFULLY RETAINED INTO JAPAN, A NATION CONGRESS HOLDS NONCOMPLAINT TO THE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION (HAGUE CONVENTION), INTERNATIONAL CHILD ABDUCTION REMEDIES ACT, AND, THE SEAN AND DAVID GOLDMAN INTERNATIONAL CHILD ABDUCTION PREVENTION ACT, AND, WHERE THE DEPARTMENT OF STATE HOLDS JAPAN NONCOMPLIANT TO THE HAGUE CONVENTION AS WELL**

1

# EXHIBIT A

## I.

## <u>Venue and Jurisdiction</u>

This Court is the proper venue and has personal jurisdiction over Defendants Brian Schatz (Schatz) and Jennifer Wooton (Wooton) because they reside, and, engage in business in Honolulu, Hawaii. Hawaii Revised Statutes §662-2, *"[W]aives immunity for liability for the torts of its employees and where such employees shall be liable in the same manner and to the same extent as a private individual under like circumstances."*

## II.

## <u>Statement of Fact</u>

1.   Plaintiff sues Bran Schatz (Schatz) and Jennifer Wooton (Wooton) for child endangerment, violations of the Privacy Waiver Act, for defamation per se, money damages in the amount of $450,000.00, and for wrongful interjection into Plaintiff's minor child's passport application, which was sought after the child was abducted and wrongfully retained into Japan, November 11th 2018.

2.   Passport was sought because the abductor, the child's mother, had destroyed the passport to prevent the child from returning to the child's habitual residency, in the United States. The actions of the child's mother violated The Hague Convention, Article 3.

3.   After Plaintiff's child was abducted and wrongfully retained in Japan, he took physical custody of the child, and intended to return to the U.S. immediately. However, because the child's passport was destroyed, Plaintiff and the child were forced to remain in Japan until the passport matter could be resolved.

4.   Initially, Plaintiff sought a Hague Convention return order from Japan Central Authorities, as that was supposed to be the quickest way for the child to return home. However, Japan's Central Authorities refused to issue a return order.

5.   Japan has never issued a return order for any child abducted out of any nation. At the time of seeking the return order both Congress and the Department of State (DOS) held Japan noncompliant to The Hague Convention.

6.    None of the several thousand U.S. citizen children abducted into Japan have ever received a return order. Congress has long condemned Japan as a black hole for child abduction. These facts are stated to make a clear showing how exigent Plaintiff and his child's circumstances were and continue to be, and, to make a clear showing Schatz and Wooten egregiously violated not only Plaintiff's parental rights to obtain passport, but took acts in direct contradiction to The Hague Convention Treaty, the Supreme Law of the Land, and Acts of Congress, including the International Child Abduction Remedies Act, and the Goldman Act.

7.    By January of 2019, Plaintiff and child were still stranded in Japan without passport for the child. The child's mother had already abandoned the child, and Plaintiff and child were homeless.

8.    February 14th 2019, Plaintiff placed his 21" iMac computer on the child's stroller and pushed the stroller to the Sendai International Center Train Station. The train station had wireless internet and Plaintiff took the computer inside a bathroom, locked the door, took the computer out of its box, plugged it into an outlet, turned on the computer, connected to the internet and sent emails communications to several congressmen and senators, including Schatz. Plaintiff sought aid in obtaining reissuance of passport for his child, due exigent circumstances.

9.    The child was with Plaintiff at all times.

10.   While sending emails the station staff pounded on the door demanding Plaintiff leave the bathroom. Plaintiff had to leave the bathroom and left the station.

11.   February 15th 2019, Plaintiff and his child returned to the train station, locked themselves in the same bathroom and checked for responses.

12.   Wooten, Schatz's Director of Constituent Services responded to Plaintiff's email. *Exhibit A., are true and correct copies of emails that occurred between Plaintiff and Wooton.*

13.   Wooten and Schatz were aware Plaintiff had filed suit in federal court to compel the DOS and Tokyo Embassy to reissue passport without two parent consent under, CFR 2012 Title 22 Vol.1 §51-28, 8 FAM 502.5-2e(4) and 8 FAM 502.5-3d(4).

3

*14.*   Wooton provided Plaintiff a Privacy Waiver Form. *Exhibit B., is a true and correct copy of the Privacy Waiver Form.*

*15.*   Wooton communicated to Plaintiff that she could not contact the DOS or Tokyo Embassy, or submit any documents on his behalf without a manually signed waiver.

*16.*   Plaintiff used a digital pen to manually sign the waiver and emailed it to Wooton.

*17.*   Wooton told Plaintiff he had to print the document, scan it, sign it with a pen and then rescan it, and email the form back.

*18.*   Plaintiff informed Wooton the manner in which they were communicating and that he had no access to a printer or scanner.

*19.*   Wooton told Plaintiff she was unable to act without the manually signed waiver.

*20.*   The station staff returned to the bathroom door and began pounding on it for Plaintiff to get out. Plaintiff asked Wooton to accept the digitally signed waiver due the exigent circumstances, but she refused. By that time the Sendai Police were also outside the bathroom door. Plaintiff communicated angry words to Wooton out of complete terror, and helplessness due the dire and stressful circumstances and turned the computer off and began to cry. Plaintiff left the bathroom and had to deal with police who were already aware of Plaintiff and his child's plight.

*21.*   Wooton then, without the "manually signed" waiver, and without Plaintiff's knowledge or consent contacted the DOS and Tokyo Embassy via both email and telephone call, defaming Plaintiff, and demanded a welfare check on the child and that passport issuance be denied. *Exhibit C., is a true and correct copy of Wooton's initial communication with the DOS and Tokyo Embassy. The haranguing diatribe clearly defames Plaintiff, interferes with Plaintiff's parental rights and skews facts including claiming as wrong information the DOS and Tokyo Embassy had already knew was correct information.*

22.   Wooton was fully aware she was not to disclose the private information, which included non-redacted copies of Plaintiff and his child's passports, birth certificates, Hague Convention return order application, a statement of facts and other sensitive documents

4

that included names, addresses, email addresses and telephone numbers of information that never should have been publicly exposed without redaction.

23. Fully aware her conduct was improper, Wooton turned over said document to the DOS and Tokyo Embassy anyway.

24. Wooton also demanded the DOS engage Japanese police and go to where Plaintiff was located, and force themselves into performing a "welfare check." Wooton claimed Plaintiff would "interfere" with the welfare check and cautioned the government officials.

25. Immediately after Wooton engaged the DOS and Tokyo Staff via email and telephone call, passport issuance was denied.

26. Passport issuance was denied February 15th 2019, and Wooton and Schatz knew of its denial even before Plaintiff.

27. Plaintiff and his child have been forced to remain in Japan since passport denial, and the resulting damages including Plaintiff being involved in at least EIGHT different courts including state and federal courts seeking passport issuance.

28. Plaintiff has lost salary, business opportunities, substantial savings, and has been financially destroyed due Schatz and Wooton's interference into a matter they knew they had no right to be involved in, as they concede themselves they never obtained a manually signed waiver.

29. Wooton knew her conduct violated Plaintiff's privacy rights, the Privacy Waiver Act, and that she did not have permission to engage any third party regarding the passport matter, yet she did so anyway, and admits it in her letter to the DOS and Tokyo Embassy, evident in Exhibit B.

30. What makes Defendants' tortious conduct especially reprehensible is where the child had already suffered abuse, not by Plaintiff, but by the mother, and Japan's Yonezawa police. The child suffered serious injuries in those matters.

31. Moreover, Japan's Sendai Police Headquarters investigated the child's injuries, prior to Defendants' wrongful interjection into the matter, and those officials concluded the child suffered abuse at the hands of the mother and Yonezawa police officers.

5

32.     Further, prior to Defendants' wrongful interjection into the matter, Plaintiff had already had his child diagnosed by two of Japan's leading child experts, Akiko Ohnogi PhD., and Yu Abe (Dr. Abe) PhD. Both concluded the child suffered irreparable psychological, emotional and developmental harm due abduction and abandonment.

33.     Dr. Abe also provided developmental counseling to the child for several months.

*34.*   Finally, no welfare check was ever carried out by the DOS, because it was unnecessary and this is evident in the DOS and Tokyo Embassy's own Administrative Records. *Exhibit D., are true and correct copies of the DOS and Tokyo Embassy response to Wooton's demand for a welfare check, which was not performed.*

*35.*   The extensive damage caused by the Defendants cannot be stated in mere words. Plaintiff and his child lived out of a suitcase for more than two years. Plaintiff's visa to remain in Japan expired, and he was threatened by Japan's Immigration Bureau with arrest, detention and deportation. Moreover, Plaintiff and child finally obtained housing as legal battles ensued for passport issuance and sole parental custody orders which are still unresolved. Further, because of visa expiration, Plaintiff has been unable to obtain employment, or to mitigate damages, and as a result, Plaintiff was unable to pay housing rent. Finally, Plaintiff and child were ordered by Sendai District Court to leave their dwelling place with a January 21st 2021 deadline or face eviction.

*36.*   None of these matters would have occurred but for Defendants improper conduct.

*37.*   Due Defendants' wrongful interjection into the matter, passport was not issued, resulting in a terrifying ordeal that is ongoing and which has lasted for nearly two years. Moreover, Plaintiff's child has been needlessly forced to endure these atrocities, where the child was only four-years-old, not understanding why any of this was happening.

*38.*   Plaintiff lost employment at 7000.00 USD monthly in a two-year contract to teach in a UAE nation, where all expenses would be covered including Plaintiff and his child having free fully furnished housing provided, 100% health insurance coverage and other benefits. The loss of earnings in this contract alone is $161,000.00. *Exhibit E., is a true and correct copy of the two year UAE nation employment contract.*

39.   Plaintiff has also lost more than 150,000.00 USD in other salary, business loses and business opportunities as a result of Defendants' wrongful conduct.

40.   Wooton's wrongful interjection into the passport matter also resulted in Plaintiff having to pay legal fees to retain Yohei Suda (Suda), to represent Plaintiff in a family court matter in Japan that would have been avoided had passport issued and the child returned home.

41.   Plaintiff paid 1,000,000.00 yen (9621.00 USD) to Suda, and successfully had a custody case dismissed due improper venue and lack of personal jurisdiction.

42.   Other damages include the loss of personal property Plaintiff was unable to retrieve due being stranded in the foreign country, including a brand new Ford EcoSport, Plaintiff had put down 7,000.00 USD, having a mere 10 weeks use of the vehicle prior to wrongful interjection.

43.   Other damages include the loss of two 8T OWC hard drives valued at nearly $800.00, and more than $10,000.00 in professional Nikon photography equipment Plaintiff was unable to retain possession of due being stranded in Japan.

Defendants violated Hawaii's Privacy Waiver Act and the federal Privacy Waiver Act, notably 5 U.S.C. Sec. 552a(g), and 5 U.S.C. Sec. 552a(i), which provides for civil penalties.

Defendants violated 5 U.S.C. Sec. 552a(g), and 5 U.S.C. Sec. 552a(i), by accepting Plaintiff and his child's private information and then turning it over to third parties, the DOS and Tokyo Embassy, and perhaps other parties, without Plaintiff's authorization, knowledge, or consent.

The Judicial Remedies and Penalties for Violating the Privacy Act at 142, states:

The Act specifically provides civil remedies, 5 U.S.C. Sec. 552a(g), including damages, and criminal penalties, 5 U.S.C. Sec. 552a(i), for violations of the Act.
An individual claiming such a violation by the agency may bring civil action in a federal district court. If the individual substantially prevails, the court may assess reasonable attorney fees and other litigation costs against the agency. In addition, the court may direct the agency to grant the plaintiff access to his/her records, and when appropriate direct the agency to amend or correct its records subject to the Act.
Actual damages may be awarded to the plaintiff for intentional or willful refusal by the agency to comply with the Act.

7

A civil action may be filed in the U.S. District Court in the district where the requester resides or has his/her principal place of business; in which the agency records are located; or in the District of Columbia.

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). *See: https://www.justice.gov/opcl/conditions-disclosure-third-parties.* Federal officials handling personal information are "bound by the Privacy Act not to disclose any personal information and to take certain precautions to keep personal information confidential." Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n, 715 F.3d 631, 650 (7th Cir. 2013). A "disclosure" can be by any means of communication – written, oral, electronic, or mechanical. See OMB Guidelines, 40 Fed. Reg. 28,948, 28,953 (July 9, 1975). The manner in which Plaintiff and his child's private information was disclosed by Wooton does not fall within any of the 12 exceptions under the Act.

**Wooton wasn't satisfied with sending a two-page rant to the DOS and Tokyo Embassy, violating Plaintiff and his child's privacy. Thereafter she initiated a telephone call, and demanded Plaintiff's child be denied passport. After the phone ended, DOS staff made contact with other staff via email notifying them about the phone call.**

**Thereafter, the DOS and Tokyo staff sent emails communications throughout the two agencies communicating the senator was "happy" passport would be denied.** *See: Department of State Administrative. Record at pages 401-500, pages 41 and 46.*

### III.

### Demand

Plaintiff demands monetary damages of $450,000.00 for child endangerment, pain and suffering, Privacy Waiver Act violations, and for Defendants' interference into Plaintiff's child passport application, a matter Defendants had no right to interfere in without a "manually signed" waiver, which Defendants had demanded, and which they conceded had not obtained.

Respectfully Submitted,

8

January 10th 2021


Jack Stone
Maison Sato 101
2-2-15 Tsunogoro
Aoba, Sendai, Miyagi
Japan 980-0874
Email: mail@stackjones.com

# EXHIBIT A.

Subject: Stone, Jack - Acknowledgement
Date: 2019-01-28
From: mail@stackjones.com
To: Office of U.S. Senator Brian Schatz <casework@schatz.senate.gov>

Hello,

Please, find attached a signed Privacy Release Form, Statement of Fact, Hague Case Filing, Emergency Motion, relevant Passport forms.

Thank you,

Jack Stone

Subject: Stone, Jack - Acknowledgement
Date: 2019-01-28
From: Office of U.S. Senator Brian Schatz <casework@schatz.senate.gov>
To: mail@stackjones.com

Dear Mr. Stone:

Thank you for contacting Senator Brian Schatz regarding your efforts to obtain a replacement US passport for your son who was abducted to Japan by his mother. I understand from your email that the US Consulate ("Consulate") in Japan has refused to issue your son's passport because his mother has not consented to the replacement.  It also appears that you have filed a lawsuit in Hawaii Federal District Court that would compel the Consulate to issue the passport without your wife's consent.

We regret the adversity that you are facing because of the abduction and hope that we may be able to be helpful by improving communication with the Consulate.

Please note that our office is limited in the type of assistance that we can offer. Members of Congress are unable to overrule agency decisions and we cannot be involved in court matters. However, we can submit an inquiry to the Consulate if you have questions or need additional guidance about how to prove that your wife's consent to the passport cannot be obtained and therefore a passport can be issued without her consent.   In order for our office to submit an inquiry with the Consulate, please provide us with the following materials:

(1) Request Letter. A written letter (or email) to Senator

Schatz that explains the situation and your specific request.

(2) Privacy Release Form.  A manually signed Privacy Release Form (PRF) (attached).

This form can be completed on a computer or handwritten in ink. To avoid delays, please fill in all sections and print clearly.

You are PERSON 1 and your son is PERSON 2.  Please manually sign the form in ink.

(3) Supporting Documents.   Copies of any relevant documents including correspondence from the Consulate.

Please return these materials to our Honolulu office via mail or email (the contact information is below).  Once we receive these items we will be able to submit our inquiry to the agency.

Additionally, if you have not yet done so, you may wish to contact the Department of State to learn more about filing a Hague Application for your son's international abduction. You can also read about this process at https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-app-wizard.html.

Should you have any questions please contact me at (808) 523-2061 or at casework@schatz.senate.gov.

Sincerely,

Jennifer Wooton
Director of Constituent Services

Subject: Stone, Jack - Acknowledgement
Date: 2019-01-27
From: mail@stackjones.com
To: Office of U.S. Senator Brian Schatz <casework@schatz.senate.gov>

January 27th 2019

My name is Jack Stone. I'm currently located in Japan.

My minor child was abducted to Japan in Nov. of 2018. I currently have possession of my child, and want to return to the U.S.

The child's mother, the abductor, has abandoned him, and has given me permission to leave Japan with my child.

11

I'm seeking an EMERGENCY ORDER in U.S. Federal Court, District Court of Hawaii, under 18 U.S.C. § 1204, to get the Court to COMPEL the U.S. Embassy in Tokyo to expedite my child's replacement passport. For more than a month, the embassy has been non-responsive, irrationally demanding I get permission from the mother to issue my child's passport, where it was the mother that has refused to provide me with the passport, or has destroyed it.

My child has not seen his mother since January 2nd 2019, and my daily contacts to resolve whatever caused this matter, has failed.

At issue is my child, a U.S. citizen, has had his passport either stolen, or destroyed, by his mother, and I need my son's U.S. passport reissued, so I can return to the U.S.

While in Japan, I have mitigated damages by seeking temporary employment. I am in temporary company housing at this time, and have been bringing my child to work with me everyday, and on a daily basis. This has gone on for nearly one month. On Friday, January 25th 2019, I was told by my employer that I cannot bring my child to work any longer.

As a result of the conduct of my wife, and the order of my employer, I will immediately lose temporary housing for myself and my minor child, and lose employment as well. This places myself, and my minor child, who only turned five years old this month, in a position of peril.

The EMERGENCY ORDER is to compel the U.S. Dept. of State, and U.S. Embassy in Tokyo to issue a replacement passport for my minor child. I have filled out, and submitted the required forms, but the agencies are non-responsive. These agencies are also aware of the dire circumstances, and their conduct is both reckless, and unwarranted. The U.S. Dept. of State has a long history of recklessness resulting in serious injuries, even death of U.S. citizens abroad, due to violating their required duties, and inaction, as is the matter in this present case.

A copy of the motion has already been provided to the U.S. Dept. of State and the U.S. Embassy in Tokyo.

I greatly appreciate your efforts to help in this matter, without your help, my child will suffer endangerment, as my employer has given me until the end of the week to work. My child can no longer go to work with me.

The U.S. Embassy in Tokyo is NOT providing my child identification, which he currently does not have, NOR a passport to leave Japan.

Please contact me ASAP, and contact the ambassador to Japan, to get this matter expedited, as there are clearly exigent circumstances.

12

See: attached motion. Help me get this matter expedited.

Thank you,

Jack Stone

# EXHIBIT B.

**OFFICE OF U.S. SENATOR BRIAN SCHATZ**

300 Ala Moana Boulevard, Room 7-212 • Honolulu, Hawaii 96850
PH: (808)523-2061 • FAX: (808)523-2065 • casework@schatz.senate.gov

**PRIVACY RELEASE:** *(1) complete this form, (2) sign with a blue or black pen, and (3) return to the Honolulu office via mail, fax, or email.*

**PERSON 1**
*(check all that apply)*
☐ Military Member
☐ Dependent/Beneficiary
☐ Veteran
☐ Taxpayer
☐ Federal Retiree
☐ Guardian
☐ Deceased
☐ Other *(specify below)*

**Name:** ☐ Mr. ☐ Mrs. ☐ Ms. _____ First _____ Middle _____ Last _____ **Date of Birth:** _____

**Phone:** _____ **Email:** _____ **Date of Death:** _____

**Address:** _____

**Social Security or Tax ID #:** _____ **Civil Service Annuity (CSA or CSF) #:** _____

**Medicare Beneficiary Identifier (MBI) #:** _____ **Reference/File #:** _____

**PERSON 2**
*(check all that apply)*
☐ Military Member
☐ Dependent/Beneficiary
☐ Veteran
☐ Taxpayer
☐ Federal Retiree
☐ Guardian
☐ Deceased
☐ Other *(specify below)*

**Name:** ☐ Mr. ☐ Mrs. ☐ Ms. _____ First _____ Middle _____ Last _____ **Date of Birth:** _____

**Phone:** _____ **Email:** _____ **Date of Death:** _____

**Address:** _____

**Social Security or Tax ID #:** _____ **Civil Service Annuity (CSA or CSF) #:** _____

**Medicare Beneficiary Identifier (MBI) #:** _____ **Reference/File #:** _____

**Relationship of Person 2 to Person 1**: ☐Spouse; ☐Widow(er); ☐ Son/Daughter; ☐Parent; ☐Sibling; ☐Other: _____

**AGENCY AUTHORIZATION:** *I authorize the checked agency/agencies to release information about me to Senator Schatz and his staff ("Office").*
☐ Department of Defense (DOD); ☐ Department of Veterans Affairs (VA);  ☐ Social Security Administration (SSA);  ☐ Centers for Medicaid & Medicare (CMS);

☐ Internal Revenue Service (IRS); ☐ Office of Personnel Management (OPM); ☐ Department of Education (ED); ☐ Other _____

**THIRD PARTY AUTHORIZATION:** *I authorize this Office to receive and share information with the following person(s)/office(s) listed below.*

**Name:** _____ **Relationship/Title:** _____ **Phone:** _____ **Email:** _____

List Hawaii Congressional Office(s)/Member(s) you have contacted: _____

**AUTHORIZATION: I authorize this Office to make inquiries on my behalf. Pursuant to the Privacy Act I expressly give permission for the agency/agencies identified above to release information about me to this Office to the extent allowed by law. I understand that any information I provide may be shared with federal, state, and county officials. I certify that all information and documents provided are true and complete to the best of my knowledge.**

Signature 1:_____ Date _____ Signature 2:_____ Date_____

(Revised Mar 2020)

14

# EXHIBIT C.

| From: | ConsularTokyo |
| --- | --- |
| To: | |
| Cc: | |
| Subject: | FW: Possible Welfare Check of US Child in Japan |
| Date: | Thursday, February 14, 2019 10:50:31 PM |
| Attachments: | Stone - Email of 1-29-17.pdf |
| | Stone - Release Form.pdf |
| | Stone - Email (2-14-19).pdf |
| Importance: | High |

██████ san, ██ san,

We received the following inquiry regarding Mr. Jack Stone.  Please advise.

Thank you.

V/r,

██████████

**Official - Privacy/PII**
**UNCLASSIFIED**

**From:** Wooton, Jennifer (Schatz) [mailto:Jennifer_Wooton@schatz.senate.gov]
**Sent:** Friday, February 15, 2019 12:32 PM
**To:** ConsularTokyo
**Cc:** Wooton, Jennifer (Schatz)
**Subject:** Possible Welfare Check of US Child in Japan
**Importance:** High

Dear Sir or Madam:

We are forwarding information about a US citizen (Jack Stone) who is currently working in Japan. He is living with his 5 year old US citizen son (Masayuki Stone).  He and his wife are separated.

Background.  Mr. Stone and his Japanese National wife were recently living in Hawaii.  While Mr. Stone was on a trip to Japan, his wife secretly took their 5 year old son to Japan without his permission.  Mr. Stone was able to locate the child and has taken sole physical custody.  Mr. Stone has applied for a replacement US passport for the son so that they can return to the US. My understanding is that the Consulate has declined to issue the passport (or perhaps it is under review).

Mr. Stone contacted Senator Brian Schatz's office, hoping that we could get the Consulate to expedite the passport's issuance. We have not submitted the inquiry yet as we were waiting on a signed privacy release form (PRF). We require that our PRF be manualy signed. Mr. Stone used an electronic image of his signature. We told him that this was not sufficient and he responded with misogynist profanity directed at me and general profanity at our office (see

STATE-0428

15

attached email of 2-14-19).

This resulted in us doing so additional review of Mr. Stone's past interactions with our office. We found another request for help from two years ago. He wanted help expediting his passport. But his request included a rambling story that he had been tortured by the Japanese government and made to crawl into court with a rope tied around his waist. He sounds delusional. I attached his email for your reference (email dated 1-29-17).

Given that rambling email and the extent of his profanity, we were wondering whether it is appropriate for Consulate staff to to conduct a welfare check on his son. I am not familiar when a welfare check is warranted and leave it up to your expertise. I've attached the privacy release form with Mr. Stone's and his son's contact information. Because it is not manually signed, we are not asking for the disclosure of any priavte information about them.

Should you have any questions, please feel free to contact me at 808-523-2061 or via email at Jennifer_wooton@schatz.senate.gov.  Thank you for your assistance.

Sincerely,
Jennifer Wooton
Director of Constituent Services

OFFICE OF SENATOR BRIAN SCHATZ
300 Ala Moana Blvd., Rm. 7-212 | Honolulu, HI 96850 |PH: 808-523-2061

STATE-0429

# EXHIBIT D.

**From:**
**To:** ConsularTokyo;
**Cc:**
**Subject:** RE: Possible Welfare Check of US Child in Japan
**Date:** Thursday, February 14, 2019 10:51:00 PM

Hi all,

This staffer just called me. No response is needed to this inquiry, the congressional office is happy.

Thanks!

**From:** ConsularTokyo
**Sent:** Friday, February 15, 2019 12:50 PM
**To:**
**Cc:**
**Subject:** FW: Possible Welfare Check of US Child in Japan
**Importance:** High

_____ san, _____ san,

We received the following inquiry regarding Mr. Jack Stone.  Please advise.

Thank you.

V/r,

**Official - Privacy/PII**
**UNCLASSIFIED**

**From:** Wooton, Jennifer (Schatz) [mailto:Jennifer_Wooton@schatz.senate.gov]
**Sent:** Friday, February 15, 2019 12:32 PM
**To:** ConsularTokyo
**Cc:** Wooton, Jennifer (Schatz)
**Subject:** Possible Welfare Check of US Child in Japan
**Importance:** High

Dear Sir or Madam:

We are forwarding information about a US citizen (Jack Stone) who is currently working in Japan. He is living with his 5 year old US citizen son (Masayuki Stone).  He and his wife are separated.

Background.  Mr. Stone and his Japanese National wife were recently living in Hawaii.  While Mr. Stone was on a trip to Japan, his wife secretly took their 5 year old son to Japan without his permission.  Mr. Stone was able to locate the child and has taken sole physical custody.

STATE-0441



From: ████████
To: ████████ (Sapporo); Sapporo, ACS; ████████ (Sapporo)
Cc: Tokyo Consular ACS SCS DL
Subject: FW: Possible Welfare Check of US Child in Japan
Date: Friday, February 15, 2019 12:27:51 AM
Attachments: Stone - Email of 1-29-17.pdf
Stone - Release Form.pdf
Stone - Email (2-14-19).pdf

Importance: High

████ and ████ san,

My apologies for the seemingly endless stream of emails about this case, but we wanted to keep you aware as he's still currently residing within your consular district and could very easily come across your desk at any time.

There's no action for you at this time.

████

From: ████
Sent: Friday, February 15, 2019 12:51 PM
To: ConsularTokyo; ████
Cc: ████
Subject: RE: Possible Welfare Check of US Child in Japan

Hi all,

This staffer just called me. No response is needed to this inquiry, the congressional office is happy.

Thanks!
████

Official - Privacy/PII
UNCLASSIFIED

From: ConsularTokyo
Sent: Friday, February 15, 2019 12:50 PM
To: ████
Cc: ████
Subject: FW: Possible Welfare Check of US Child in Japan
Importance: High

████ san, ████ san,

We received the following inquiry regarding Mr. Jack Stone.  Please advise.

STATE-0446



From: ████████ (Sapporo)
To: ████████
Cc: ████████ (Sapporo)
Subject: RE: Possible Welfare Check of US Child in Japan
Date: Friday, February 15, 2019 1:29:50 AM

Thanks for keeping us in the loop, ████████

So by no action, I am understanding that no welfare check is needed at this time.
Let us know if we get to a point where we need one.

Could you remind us where he is residing?

Thank you!

████

████████
Consul, Economic & Management Officer
Consulate General of the United States of America, Sapporo
Kita 1-jo Nishi 28-chome | Chuo-ku | Sapporo | Japan 064-0821
Office: ████████ | Email: ████████

**Official - Privacy/PII**
**UNCLASSIFIED**

From: ████████
Sent: Friday, February 15, 2019 2:28 PM
To: ████████ (Sapporo); Sapporo, ACS; ████████ (Sapporo)
Cc: ████████ Tokyo Consular ACS SCS DL
Subject: FW: Possible Welfare Check of US Child in Japan
Importance: High

████ and ████ san,

My apologies for the seemingly endless stream of emails about this case, but we wanted to keep you
aware as he's still currently residing within your consular district and could very easily come across
your desk at any time.

There's no action for you at this time.

████

From: ████████
Sent: Friday, February 15, 2019 12:51 PM
To: ConsularTokyo; ████████

STATE-0460

19

# EXHIBIT E.

Dear Mr. Stone,

**APPOINTMENT LETTER/ EMPLOYMENT LETTER/ OFFER LETTER**

I am pleased to inform you that you are appointed in KINGS COLLEGE DUBAI located at 53 Naif Road, Dubai,United Arab Emirates.

YOUR JOB AND BENEFITS DETAILS are listed as follows :

* Position : ENGLISH TEACHER .
* Salary : $7000USD/Monthly.
* Working days : Sunday to Thursday (6 hours Daily).
* 30 days Paid Vacation per year.
* Free medical insurance, for a maximum of 5 persons per family.
* Free furnished apartment of two or three bedroom flat will be offered depending on the size and age of the family.
* Employment Duration : 1st FEBRUARY 2021 to 1st DECEMBER 2023 (RENEWABLE)

Please you are advised to contact the following UAE IMMIGRATION OFFICER (MR. KARIM SEDIQUR RAHMAN) for your work visa/work permit application through email : **karimsediqurrahman@gmail.com** to enable us legalize your employment at Labour Office and arrange for your 2ways air ticket and furnished accommodation to avoid any delay because you are required to arrive earlier in other to acclimatize with our working environment.

Please note that this Letter is valid for 5 days from the date of issuance and If we do not hear from you during this period we shall assume that you are not interested in the offer and our offer shall be treated as withdrawn.

For your information, you must ensure the confidentiality of this employment protocols at all times until you start working with us in Dubai, United Arab Emirates.
We wish you success and best of luck in your new appointment with us.
Have a nice day.

Sincerely,

Majid Hassan – Principal
KINGS COLLEGE DUBAI
53 Naif Road,Dubai,
United Arab Emirates.