IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACK STONE,<br><br>                    Plaintiff,<br><br>      vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CIV. NO. 22-00014 JMS-WRP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 15 |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 15

### I.  INTRODUCTION

Before the court is Defendant United States of America's ("United States" or the "Government") Motion to Dismiss seeking to dismiss all claims in Plaintiff Jack Stone's ("Plaintiff") Complaint.  ECF No. 15.  For the reasons stated below, the Motion is GRANTED, and the Complaint is DISMISSED without leave to amend.

### II.  BACKGROUND

On January 26, 2021, Plaintiff filed his Complaint in the Circuit Court of the First Circuit, State of Hawaii against United States Senator Brian Schatz and

Senator Schatz's employee, Ms. Jennifer Wooten.[1]  ECF Nos. 1, 1-2.  The

Complaint concerns Plaintiff's attempts to secure a passport for his minor son, who

had traveled to Japan with Plaintiff's estranged wife (the son's mother) without

Plaintiff's knowledge.[2]  *See* ECF No. 1-2 at PageID # 12.  After Plaintiff found his

son in Japan, and after the child was apparently abandoned by the mother, Plaintiff

sought to return to the United States with his son but was unable to do so because

his son's passport had been destroyed.  *Id.* at PageID ## 12–13.  Plaintiff contacted

Senator Schatz's office in early 2019, seeking assistance in obtaining reissuance of

his son's passport; Plaintiff's point of contact was Ms. Wooten.  *Id.* at PageID

# 13.  After exchanging various emails and documents with Plaintiff, Ms. Wooten

notified Plaintiff that Senator Schatz's office would be unable to advocate on

Plaintiff's behalf unless Plaintiff signed, in ink, a privacy waiver form.  *Id.* at

PageID # 14.  But Plaintiff was unable to scan and send a physically signed copy to

Ms. Wooten, because he could not access the necessary technology and was living

---

[1] The Notice of Removal spells her name "Wooten," ECF No. 1 at PageID # 1, although the actual spelling appears to be "Wooton," *see, e.g.*, ECF No. 1-2 at PageID ## 11–12, ECF No. 15 at PageID # 176.  The court will use the spelling "Wooten," as this case is docketed in that manner.

[2] The facts recited in the following paragraphs are taken from Plaintiff's Complaint, which the court accepts as true for the purposes of Defendant's Motion to Dismiss.  *See, e.g.*, *Pitts v. Rushing*, 2012 WL 683380, at *2 (D. Haw. Mar. 2, 2012) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

on limited means in a foreign country (Japan). *See id.* Plaintiff communicated those facts to Ms. Wooten but did so with "angry words" out of frustration. *Id.*

"Given that rambling [communication] and the extent of [Plaintiff's] profanity [in that communication]," Ms. Wooten emailed the United States Embassy in Tokyo, Japan, regarding "whether it [was] appropriate for the [Embassy] staff to to [sic] conduct a welfare check on [Plaintiff's] son." *Id.* at PageID ## 14, 26. Ms. Wooten also attached to that email copies of Plaintiff's privacy-release form with his and his son's contact information. *Id.* at PageID ## 14–15, 26. Sometime after that email communication and after a telephone call between Ms. Wooten and the Embassy (and possibly also communications between Ms. Wooten and the Department of State), Plaintiff's son was denied reissuance of his passport. *See id.* at PageID # 15.

Plaintiff alleges that Ms. Wooten wrongfully violated his privacy rights and wrongfully interfered with his son's passport application. *See id.* at PageID # 15. Specifically, Plaintiff alleges that Ms. Wooten violated the federal "Privacy Act," "Hawaii's Privacy . . . Act," the "Goldman Act," the "International Child Abduction Remedies Act," the "Hague Convention," and Plaintiff's

"parental rights," in addition to defaming Plaintiff.  *Id.* at PageID ## 12, 13, 17.

"Plaintiff demands monetary damages of $450,000.00."[3]  *Id.* at PageID # 18.

Senator Schatz and Ms. Wooten removed the case to this court on January 7, 2022.  ECF No. 1.  That removal included a Certification of Scope of Employment, wherein a designee of the Attorney General of the United States certified that Senator Schatz and Ms. Wooten were acting within the scope of their federal office or federal employment at the time the allegedly wrongful conduct occurred.  *See* ECF No. 1-1.  On the basis of that proper Certification, the court substituted the United States for Senator Schatz and Ms. Wooten pursuant to 28 U.S.C. § 2679(d); the United States is thus the sole defendant in this case, and Senator Schatz and Ms. Wooten have been dismissed.  *See* ECF No. 5.[4]

---

[3] Plaintiff does not appear to request injunctive relief in the form of passport issuance. *See* ECF No. 1-2 at PageID # 18.  To the extent the Complaint could be read as requesting such relief, that request is clearly precluded by *Stone v. U.S. Embassy Tokyo*, 2020 WL 6701078 (D.D.C. Nov. 12, 2020), *aff'd*, 2021 WL 2255016 (D.C. Cir. May 17, 2021), in which he already sought such relief.

[4] The counsel-prepared order substituting the United States for Senator Schatz and Ms. Wooten, ECF No. 5, specified that the substitution was "for the state law claims."  *Id.* at PageID # 36.  This case, however, features both state law claims and federal law claims, e.g., Plaintiff's claim under the Privacy Act, 5 U.S.C. § 552a et seq.  The court now confirms that the substitution made in the prior order should be made with respect to the claims under federal law as well, pursuant to 28 U.S.C. § 2679(d)(1).  *Compare id.* § 2679(d)(2) ("Upon certification by the Attorney General . . . , any civil action or proceeding commenced upon such claim in a *State court* shall be removed," and "the United States shall be substituted as the party defendant." (emphasis added)), *with id.* § 2679(d)(1) ("Upon certification by the Attorney General . . . , any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant.").

4

The United States filed the instant Motion to Dismiss on February 11, 2022. ECF Nos. 15, 15-1. The Motion is grounded in Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and also in Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted. *See* ECF No. 15. Plaintiff has not filed a response, which was due on March 7, 2022, ECF No. 16. Accordingly, the United States has not filed an optional reply, which was due on March 14, 2022, *id.* The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). And in a 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction. A challenge to the court's jurisdiction under

Rule 12(b)(1) can be either "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the nonmovant's allegations as true and drawing all reasonable inferences in the nonmovant's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Plaintiff is appearing pro se; consequently, the court liberally construes his Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013). Put differently, the court can deny leave to amend if amendment would be "futile." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004).

# IV.  <u>DISCUSSION</u>

For five of the seven alleged violations, Plaintiff has failed to state a legal claim upon which relief can be granted, warranting dismissal under Rule 12(b)(6).

The allegedly wrongful disclosures made by Senator Schatz and Ms. Wooten in their scope of employment—which are imputed to the United States—do not constitute a violation of the Privacy Act, 5 U.S.C. § 552a et seq., because there was no disclosure by an "agency," *id.* § 552a(b).  Under the Privacy Act, that term is limited to "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." *Id.* § 552(f)(1); *see id.* § 552a(a)(1) (incorporating the definition of "agency" from § 552).  Senator Schatz's congressional office is not an "agency." *See Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 39 n.6 (D.D.C. 2011) ("[I]f the Senate staffer himself subsequently shared information about Feldman with anyone, those disclosures are not covered by the Privacy Act, which does not apply to Congress.").  Plaintiff's Privacy Act allegations are thus dismissed under Rule 12(b)(6). *See Larkins v. Prenovost*, 2017 WL 8220229, at *1 (C.D. Cal. July 5, 2017) (dismissing Privacy Act claim under Rule 12(b)(6) because the Act "does not regulate the disclosure of records by

private individuals—it applies only to the release of information by federal agencies").

      Likewise, the allegedly wrongful disclosures by Senator Schatz and Ms. Wooten do not constitute a violation of "Hawaii's Privacy Act," which the court construes as a reference to Hawaii's Uniform Information Practices Act ("UIPA"), Hawaii Revised Statutes ("HRS") § 92F et seq.  To the extent Hawaii's UIPA even permits a private citizen to maintain a damages claim against a government entity for disclosing personal information, *see* HRS § 92F-27(d)(1),[5] such a claim could only be brought against an "agency."  *Id.* ("In any action brought under this section in which the court determines that the *agency* knowingly or intentionally violated a provision of this part . . . ." (emphasis added)).  And "agency" is defined to include only "unit[s] of government in [Hawaii] State, any county, or any combination of counties," i.e., not a component of the federal government, such as Senator Schatz's congressional office.  HRS § 92F-3.

---

[5] It is highly questionable whether a private citizen can sue a government entity for damages under Hawaii's UIPA for an allegedly wrongful *disclosure* of information.  The default rule under UIPA is that all records are publicly available.  *See* HRS § 92F-11(a).  The limited exceptions appear to permit—not require—the government to keep certain records confidential.  *See* HRS § 92F-13 ("This part shall not require disclosure of: . . . Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy."); *see also* State of Hawaii Office of Information Practices, *Guide to Hawaii's Uniform Information Practices Act* 17 (2018) ("When a record falls within an exception, an agency may withhold the record, but is not prohibited by the UIPA from disclosing it."), *available at* https://oip.hawaii.gov/wp-content/uploads/2018/10/October-2018-UIPA-Manual.pdf (last visited March 29, 2022).

8

Regarding Plaintiff's allegations under the "Goldman Act," which the court construes as a reference to the International Child Abduction Prevention and Return Act, 22 U.S.C. § 9101 et seq., that Act does not permit a private damages claim, much less a damages claim against the United States. *See* Sean and David Goldman International Child Abduction Prevention and Return Act of 2014, Pub. L. No. 113-150, 128 Stat. 1807. Nor does the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 et seq. (formerly 42 U.S.C. § 11601 et seq.), which explicitly provides for awards of only certain "costs and fees" in civil actions (i.e., not actual damages) and, moreover, limits civil actions to petitions seeking "the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child." Pub. L. No. 100-300, 102 Stat. 437 (1988). Plaintiff's reference to the Hague Convention on the Civil Aspects of International Child Abduction is not legally well-founded either, because that treaty was implemented through ICARA, which, again, does not permit a private damages claim against the United States. *See Abbott v. Abbott*, 560 U.S. 1, 5 (2010) ("The United States is a contracting state to the [Hague Convention on the Civil Aspects of International Child Abduction]; and Congress has implemented its provisions through the [ICARA] . . . ." (citations omitted)).[6]

---

[6] *See also Ozaltin v. Ozaltin*, 708 F.3d 355, 360 n.6 (2d Cir. 2013) ("Importantly, even when a treaty is 'self-executing' in the sense that it creates binding federal law, the treaty still

(*continued . . .* )

In sum, five of Plaintiff's alleged violations of law—the Privacy Act, Hawaii's UIPA, the International Child Abduction Prevention and Return Act, ICARA, and the Hague Convention—fail to state a claim upon which relief can be granted and are thus dismissed under Rule 12(b)(6).

The two remaining allegations—defamation under Hawaii law and wrongful interference with parental rights—are dismissed under Rule 12(b)(1). That is because, even assuming those allegations are grounded in cognizable legal claims, the court lacks jurisdiction over such claims given the United States' sovereign immunity. *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) ("Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit.").

As the United States correctly argues, Plaintiff's state-law defamation claim is a tort claim and is therefore governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq. *See* ECF No. 15-1 at PageID ## 184– 85. The FTCA waives the United States' sovereign immunity against certain torts but explicitly excepts from that waiver "libel" and "slander." 28 U.S.C. § 2680(h); *see also McLachlan v. Bell*, 261 F.3d 908, 912 (9th Cir. 2001) ("Ordinarily a

---

may not confer a private right of action to enforce rights recognized under the treaty. *See Medellin v. Texas*, 552 U.S. 491, 506 n.3 . . . (2008). Because ICARA creates a private right of action to enforce rights under the Hague Convention, *see* [22 U.S.C. § 9003(b)], we need not address whether the Convention itself conferred any such right.").

holding that conduct is within the scope of employment has the consequence that an injured plaintiff can, as a practical matter, recover against a defendant that is not judgment-proof.  Here it has the opposite consequence.  Because the [FTCA] excepts from the waiver of sovereign immunity 'libel' and 'slander,' treating the defamation claims as within the scope of employment eliminates them." (footnote omitted)).  Thus, even assuming that Plaintiff properly alleges all elements of defamation under Hawaii law, Plaintiff's defamation claim must be dismissed under Rule 12(b)(1) given the United States' sovereign immunity against that claim.  *See McLachlan*, 261 F.3d at 912 (affirming dismissal of defamation claims under Rule 12(b)(1) due to sovereign immunity).

Finally, Plaintiff's allegation of wrongful interference with his "parental rights," which the court construes as a reference to his parental rights under the Due Process Clause of the Fifth Amendment,[7] also fails in light of the United States' sovereign immunity.  Importantly, for this allegation—as with all other allegations in the Complaint—Plaintiff is seeking damages, not injunctive relief.  *See* ECF No. 1-2 at PageID # 18.  And "[i]n a suit against the United States,

_____

[7] *See Troxel v. Granville*, 530 U.S. 57, 77 (2000) (Souter, J., concurring) ("[The Supreme Court] [has] long recognized that a parent's interests in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Due Process Clause of the Fourteenth Amendment."); *see also id.* at 65 ("We have long recognized that the [Fourteenth] Amendment's Due Process Clause, like its Fifth Amendment counterpart, guarantees more than fair process." (citation and quotation marks omitted)).

there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392, 400 (1976). That is true even for constitutional claims. *See Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("[T]he United States has not waived its sovereign immunity in actions seeking damages for constitutional violations."). Thus, assuming *arguendo* that Plaintiff properly alleges a violation of his constitutional parental rights, Plaintiff's constitutional claim must be dismissed under Rule 12(b)(1) given the United States' sovereign immunity against that claim.[8]  *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1461 (9th Cir. 1985) (affirming dismissal of constitutional claims, "for lack of jurisdiction," due to sovereign immunity).

---

[8] To the extent Plaintiff's allegations concerning his parental rights could be construed as constitutional claims against Senator Schatz and Ms. Wooten in their individual capacities, those claims would still fail because there is simply no statute or case law under which Plaintiff can recover damages for such a constitutional violation. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017) (recounting that the Supreme Court "has approved . . . an implied damages remedy under the Constitution itself" against individual-capacity defendants in only three contexts: (1) "to compensate persons injured by federal officers who violated the prohibition [in the Fourth Amendment] against unreasonable search and seizures," *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) "a damages remedy for gender discrimination" under the "Fifth Amendment Due Process Clause," *Davis v. Passman*, 442 U.S. 228 (1979); and (3) "a damages remedy for failure to provide adequate medical treatment" under the "Eighth Amendment['s] Cruel and Unusual Punishments Clause," *Carlson v. Green*, 446 U.S. 14 (1980)). *Bivens* does not extend to Plaintiff's claim that Senator Schatz and Ms. Wooten violated Plaintiff's constitutional parental rights. *See Lyndon v. United States*, 2020 WL 3405530, at *6 (D. Haw. June 19, 2020) (discussing *Ziglar* and declining to extend *Bivens* to provide a damages remedy for SEC official's "deprivation of Plaintiff's business and financial property without due process," and noting that "the Supreme Court has repeatedly rejected extending *Bivens* to Fifth Amendment due process claims").

All of Plaintiff's allegations are, therefore, dismissed under either Rule 12(b)(6) or Rule 12(b)(1).  Those dismissals are without leave to amend because any amendment would be futile.  In that regard, Plaintiff could not amend his Complaint to seek injunctive relief against Senator Schatz and Ms. Wooten— their allegedly wrongful actions, i.e., the emails and phone communications, have already occurred.  Further, Plaintiff could not amend his Complaint to seek injunctive relief against the United States (or its entities) for reissuance of his son's passport—such a claim would be precluded by *Stone v. U.S. Embassy Tokyo*, 2020 WL 6701078 (D.D.C. Nov. 12, 2020), *aff'd*, 2021 WL 2255016 (D.C. Cir. May 17, 2021).

///

///

///

///

///

///

///

///

///

///

# V.  **CONCLUSION**

Plaintiff's alleged violations of the Privacy Act, Hawaii's UIPA, the

International Child Abduction Prevention and Return Act, ICARA, and the Hague

Convention fail to state a claim upon which relief can be granted, and are thus

dismissed under Federal Rule of Procedure 12(b)(6).   Plaintiff's defamation and

parental-rights claims are claims over which the court lacks subject-matter

jurisdiction and are thus dismissed under Federal Rule of Civil Procedure 12(b)(1).

Accordingly, the Government's Motion to Dismiss, ECF No. 15, is GRANTED.

Plaintiff's Complaint is DISMISSED without leave to amend.   The Clerk of Court

is DIRECTED to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 29, 2022.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Stone v. United States*, Civ. No. 22-00014 JMS-WRP, Order Granting Defendant's Motion to
Dismiss, ECF No. 15